NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., *Plaintiff*, v. RICHARD W. NEU, et al., *Defendants*. | Civil Action No. 17-3475 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on the Order to Show Cause for Interpleader Relief filed by Plaintiff JPMorgan Chase Bank, N.A. ("Chase"). Chase seeks an order (1) directing it to place the funds at issue into the Federal Registry, (2) discharging Chase from all further liability with respect to the funds, (3) enjoining two underlying state court proceedings, (4) preventing Defendants from instituting any other proceeding that may affect the funds and (5) for an award of attorneys' fees and costs. D.E. 3. Defendant Amy Neu does not object to Chase's application for interpleader relief. D.E. 11.[1] Defendants Richard Neu, Warren Dean and the entity Defendants[2] filed a brief in opposition arguing, among other things, that this Court lacks subject

---

[1] In her opposition brief, Amy Neu indicated that she did not take a position as to Chase's requested interpleader relief but argued that the Court should permit the New York Surrogate's Court actions to go forward. During oral argument on May 23, 2017, counsel for Ms. Neu indicated that he was withdrawing his objection to the underlying dispute remaining before the Court.

[2] The entity Defendants are the Richard W. Neu Issue Trust; Richard W. Neu Issue Trust No. 1; Richard W. Neu Issue Trust No. 2 (collectively the "Neu Trusts"); Eden Wood Realty, LLC; Neu Investment Corp.; Allentown Commerce Park Corp.; River Park Business Center Inc.; River Park

matter jurisdiction.[3] D.E. 13. The Court reviewed the parties' submissions in support and opposition and heard oral argument on the matter. For the reasons discussed below, Plaintiff's application is **GRANTED in part**.[4] The Court directs Chase to deposit the Funds at issue into the Federal Registry, enjoins two underlying state court proceedings, and orders that Defendants cannot institute any other proceeding that may affect the funds. The Court will address the remaining portions of Plaintiff's application at a later date.

I.   BACKGROUND

Richard Neu is the operational trustee of the Neu Trusts, which are the beneficial owners of the remaining entity Defendants. Compl. ¶¶ 30, 32, D.E. 1. In other words, the Neu Trusts control the entity Defendants, and the entity Defendants have the funds at issue. The entity

---

Residential Center LLC; River Park Technology Center Inc; Eden Wood Properties Inc.; Eden Wood Corp.; Materials International Trading Corporation; 27E65 Corporation; Neu Holdings U.S. Corporation; Crossroads Business Center, LLC; 143 South Mapelton LLC; and River Park Business Center LLC.

[3] Richard, Mr. Dean, and the entity Defendants opposed this motion together and are collectively represented by the same attorney. The Court, therefore, will refer to these Defendants as "Richard" and will refer to Defendant Amy Neu as "Amy."

[4] During oral argument, Chase requested that the Court enter a temporary restraining order ("TRO") to effectuate the relief provided herein. The Court does not believe that a TRO is the appropriate avenue for two reasons. First, in the Court's view, a temporary restraint is suitable when immediate relief is necessary and before the parties can fully brief their positions and be heard during a preliminary injunction hearing. However, in this matter, the functional equivalents of preliminary injunction briefing and argument have already occurred. Second, the strictures of standard injunctive relief do not apply to this interpleader action. *See Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 104 (E.D.N.Y. 2013) ("Of importance, "[Section] 2361 enables a party meeting the requirements of [Section] 1335 to obtain a restraining order without following the procedures set forth in Federal Rule of Civil Procedure 65, which normally governs the issuance of injunctive relief." (quoting *Sotheby's Inc. v. Garcia*, 802 F. Supp. 1058, 1066 (S.D.N.Y. 1992))). As a result, the Court is granting limited relief at this time, but a final decision will not be rendered until Defendants have filed answers to the Complaint and the case proceeds in due course.

Defendants maintain twenty-one bank accounts at Chase, which as of May 9, 2017, collectively held more than $14 million. *Id.* ¶ 26. Amy Neu was an officer of at least some of the entity Defendants and through her position was the authorized signatory of the Chase accounts. *Id.* ¶ 31. Amy is the daughter of Richard.

On April 6, 2017, Richard removed Amy from her positions with the entity Defendants and sought to revoke her signature authority over the Chase accounts. *Id.* ¶ 32. In response, Amy filed petitions in the Surrogate's Court of the State of New York seeking to remove Richard as trustee of the Neu Trusts and be appointed as Interim Trustee (the "New York Proceedings") on April 12, 2017.[5] *Id.* ¶ 33. The same day, Amy notified Chase of the New York Proceedings, informing Chase that if it followed any of Richard's directions "you do so at your own peril." *Id.* ¶ 34. Due to the existence of the dispute concerning control of the Neu Trusts, Chase froze all twenty-one accounts on April 18, 2017. *Id.* ¶ 35.

On April 24, 2017, Richard commenced an action against Chase[6] in the Superior Court of New Jersey, Chancery Division, compelling it to lift the freeze on the accounts and to recognize the persons designated by the Company Defendants as the persons with signature power with respect to the Chase accounts (the "New Jersey Action"). *Id.* ¶¶ 37-38. The court in the New Jersey Action enter a temporary restraining order (the "TRO") on April 28, 2017, ordering that Richard had sole authority over the funds. The TRO also enjoined Chase from maintaining a

---

[5] Amy's briefing indicates that she also filed an earlier suit, on February 2, 2017, in New York Surrogate's Court. Amy's Br. at 3-4, D.E. 11. The earlier suit seeks an accounting from Richard, as operational trustee, and Mr. Dean, as the independent trustee, of the Neu Trusts. Amy indicates that the earlier case was prompted by her concern that Richard was recklessly causing substantial diminution of the trust assets. *Id.*

[6] Richard amended the Complaint on April 26, 2017 to add Amy as a defendant. Compl. ¶ 40. According to the briefs submitted, one of Amy's attorneys has also been added as a defendant.

3

complete freeze on the accounts, and required Chase to allow the Company to make payments "in the ordinary course of business." *Id.* ¶ 42. Richard, however, was prohibited from paying "extraordinary expenses, transfers or payment not part of the company's ordinary day[-]to[-]day operations." *Id.* The TRO does not require Chase to monitor the accounts to determine whether specific transactions are in the ordinary course of business but also does not immunize Chase from liability. *Id.* ¶ 44.

On May 8, 2017, Richard requested that Chase transfer $10 million from one Chase account into another account. Chase was concerned that the requested transfer was not consistent with the TRO in the New Jersey Action. *Id.* ¶ 46. On May 15, 2017, Chase filed this matter for interpleader relief pursuant to 28 U.S.C. § 1335 and sought an injunction pursuant to 28 U.S.C. § 2361.

## II. LEGAL STANDARD

Interpleader may occur through the federal interpleader standard, 28 U.S.C. § 1335, or pursuant to Federal Rule of Civil Procedure 22. *See Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007). Because Chase brought this action pursuant to Section 1335, the Court will only address statutory impleader. Section 1335 grants federal district courts with original jurisdiction over an interpleader action when there is "minimal diversity" between two or more adverse claimants, as defined by 28 U.S.C. § 1332, and if the amount in controversy is $500 or more. *Id.*; *see also* 28 U.S.C. § 1335(a). It also requires the plaintiff to deposit the funds at issue into the court's registry. 28 U.S.C. § 1335(a). If these requirements are satisfied, a court has subject matter jurisdiction over the interpleader action.

In addition, Section 2361 authorizes district courts to enter preliminary and permanent injunctions restraining claimants from instituting or prosecuting legal proceedings in state or

federal courts that could affect the *res* at issue in an interpleader action. 28 U.S.C. § 2361. Courts have "extensive discretion under Section 2361 with regard to the issuance and the scope of the order." *Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L.*, 699 F. Supp. 2d 1344, 1351 (S.D. Fla. 2010) (quoting 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1717 (3d ed. 2009)). "Section 2361 enables a party meeting the requirements of Section 1335 to obtain a restraining order without following the procedures set forth in [Federal Rule of Civil Procedure] 65, which normally governs the issuance of injunctive relief." *N.Y. Life Ins. Co. v. Apostolidis*, 841 F. Supp. 2d 711, 720 (E.D.N.Y. 2012); *see also* Fed. R. Civ. P. 65(e)(2) ("These rules do not modify . . . 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader.").

"The equitable remedy of interpleader allows 'a person holding property to join in a single suit two or more persons asserting claims to that property.'" *Metro. Life Ins. Co.*, 501 F.3d at 275 (quoting *NYLife Distrib., Inc. v. Adherence Grp.*, 72 F.3d 371, 372 n.1 (3d Cir. 1995)). Interpleader allows the party holding the property at issue, or the stakeholder, to file suit, deposit the property with the court, withdraw from the proceeding, and allow the parties with the competing claims to litigate the underlying dispute. *Id.*

An interpleader action usually proceeds in two stages. At the first stage, "the court determines whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants." *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009). The court determines the respective rights of the claimants to the interpleaded funds at the second stage. *Id.* Ultimately, interpleader "relieves the stakeholder from determining at his peril the merits of the competing claims and shields him from the prospect of

multiple liability; [and] gives the claimant who ultimately prevails ready access to the disputed fund." *NYLife Distrib., Inc.*, 72 F.3d at 374.

**III. ANALYSIS**

The parties do not dispute that the amount in controversy and diversity requirements are satisfied here.[7] Richard, however, contends that the requirements for statutory interpleader are not met because there are not two adverse claimants. Specifically, Richard argues that there is no dispute that all the funds in the Chase accounts belong to the entity Defendants; "[n]one of the other defendants or any other person claims to be entitled to these funds." Richard's Br. at 6, D.E. 13. As a result, the Court does not have subject matter under Section 1335, according to Richard. *Id.* at 6-8. Chase counters that because there are competing claims regarding control over the funds, the adverse claimant requirement is satisfied. Chase's Reply at 3, D.E. 16.

The federal interpleader statute "is remedial and [should] be liberally construed." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967); *see also NYLife Distrib., Inc.*, 72 F.3d at 381 ("[I]t has long been recognized that the interpleader statute is remedial, aimed at assisting a party who fears the vexation of defending multiple claims to a fund or property under his control by providing him the opportunity to satisfy his obligation in a single proceeding."). As a result, the adverse claimant requirement is satisfied when the defendants in an interpleader action dispute who control the funds at issue. For example, in *Bank of America, N.A. v. Jericho Baptist Church Ministries, Inc.*, the underlying dispute addressed whether the original board or a later-formed board controlled church assets. No. PX 15-2953, 2016 WL 4721257, at *1 (D. Md. Sept. 9, 2016).

---

[7] Section 1335 only requires that two claimants have diverse citizenship. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967). This minimal diversity requirement is satisfied here because Richard is a citizen of California and Amy is a citizen of New Jersey. Compl. ¶¶ 3, 5.

6

The two boards were involved in a "vigorous legal feud," which resulted in numerous lawsuits that were filed to "determine fully and finally which entity rightfully govern[ed] the Church." *Id.* at *2. The Bank of America, which held the funds at issue, filed an interpleader action in response to the competing claims from the two boards. *Id.* at *2. The court in *Jericho Baptist* concluded that Bank of America's interpleader action was proper. *Id.* at *4. Similarly, in *National Bank of Detroit v. Shelden*, the "principal question" presented in the interpleader litigation involved a determination of who were the present trustees of the trust. 730 F.2d 421, 421-22 (6th Cir. 1984); *see also Paskenta Band of Nomlaki Indians v. Crosby*, No. 15-538, 2017 WL 385922, at *3 (E.D. Cal. Jan. 24, 2017) (granting interpleader relief regarding which of two competing tribal councils had authority over interpleaded accounts).

In addition, "jurisdiction in interpleader is not dependent upon the merits of the claims of the parties interpleaded." *Bierman v. Marcus*, 246 F.2d 200, 202 (3d Cir. 1957). The stakeholder is not required to evaluate the positions of the adverse claimants and make its own determination as to which claimant will ultimately prevail. However, the appropriateness of an interpleader action rests on whether the stakeholder has "a real fear of the vexation and hazard of conflicting claims." *Id.* In other words, the stakeholder needs to have a "*bona fide* fear of adverse claims[.]" *CNA Ins. Cos. v. Waters*, 926 F.2d 247, 251 (3d Cir. 1991) (internal quotation and citation omitted).

In this instance, Chase has a legitimate basis for its fear of conflicting claims and potential liability stemming from the New York and New Jersey litigation. Amy and Richard have placed Chase in the quintessential position that an interpleader action is intended to remedy. Amy has threatened Chase, stating that if it takes direction from Richard, "you do so at your own peril," due to its knowledge of the New York action (Compl. ¶ 34), and at oral argument, Chase informed the Court that Richard has filed contempt proceedings against Chase in the New Jersey action for

refusing to unfreeze the accounts and make the requested $10 million transfer per Richard's instructions. Moreover, the litigation here is occurring in two separate, independent jurisdictions. Consequently, Chase faces a real risk of being asked to comply with competing orders from different courts. In short, Chase has "a real and reasonable fear of exposure to double liability or the vexation of conflicting claims," which justifies its interpleader complaint. *See Bierman*, 246 F.2d at 202.

Richard cites to a number of cases to support his argument that there are not adverse claimants here. Richard's Br. at 7-8. However, the cases are inapposite. *See CNA Ins. Cos.*, 926 F.2d at 252 (concluding that there was no bona fide risk of adverse claims); *Libby, McNeill, & Libby v. City Nat'l Bank*, 592 F.2d 504, 507-09 (9th Cir. 1978) (concluding that interpleader was not appropriate where only one party made claim regarding disputed fund and other potential parties disclaimed any interest); *Bierman*, 246 F.2d at 203 (plaintiffs did not have good faith belief that there were actually competing claims); *Frank Briscoe Co. v. Albert Pick Co.*, 282 F. Supp. 321 (D.N.J. 1968) (dismissing interpleader action because it involved two separate funds with separate claimants).

Here, unlike *Libby* and *Frank Briscoe Co.*, there is only one "fund" at issue, that is, the aggregate amounts held by Chase. Moreover, the Court finds Richard's argument concerning the difference between ownership and control of the funds to be unavailing. Richard argues that the entity Defendants own or possess the funds, so the New York Proceedings are distinct from the New Jersey Action because the New York case only concerns the trustees of the Neu Trusts. Richard's Br. at 6-7. But this argument ignores the uncontroverted fact that the Neu Trusts control the entity Defendants. As Richard frankly admits: "If [Amy] were to be successful in the New

8

York Surrogate's Court Action, she would control the parent corporation, Neu Holdings, which, in turn, would control the subsidiary companies." *Id.* at 7.

Richard further argues that the interpleader should be denied because Chase has does not come to court with "clean hands," thereby depriving it of its right to equitable relief. *Id.* at 19-20. The doctrine of unclean hands may be used to deny equitable relief if the party seeking relief "is guilty of fraud, unconscionable conduct, or bad faith directly related to the matter at issue that injures the other party and affects the balance of equities." *Saudi Basic Indus. Corp. v. ExxonMobil Corp.*, 401 F. Supp. 2d 383, 386 (D.N.J. 2005) (quoting *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n.12 (3d Cir. 1999).

Richard contends that Chase has unclean hands because it did not transfer the $10 million as requested by Richard and because Chase did not unfreeze the entity Defendant's accounts following the TRO in the New Jersey Action. But the Court again finds Richard's arguments unavailing. First, Richard's argument goes directly to the underlying facts of the Complaint (Chase's concern of distributing funds in the light of the competing claimants). Richard has not cited any cases in which the doctrine of unclean hands applies in such a scenario as opposed to some prior conduct independent of the basis for interpleader relief. More importantly, the Court finds that Chase acted prudently in the face of Richard's request to transfer the $10 million. As noted, the TRO in the New Jersey Action did not require Chase to monitor the bank accounts but it also did not absolve Chase of any potential liability concerning the accounts. The TRO also prohibited "extraordinary" transfers. Compl. ¶¶ 42, 44. As a result, when faced with a request to transfer $10 million, Chase cannot be faulted for acting prudently and reasonably in seeking guidance from the court in the New Jersey Action to determine whether such a transfer would violate the TRO.

As to Richard's argument that Chase failed to unfreeze the accounts, the TRO restrained Chase from freezing the accounts to the extent the entity Defendant's needed to "pay their obligations incurred in the ordinary course of business, including, but not limited, pay vendors and pay employee payroll and employee benefits." *Id.* ¶ 42. In light of the TRO, Chase made the reasonable request as to the ordinary business obligations of the entity Defendants. Richard refused to provide any information in response. Again, Chase's prudent and reasonable request to ensure that the TRO was not violated does not constitute unclean hands but rather a reasonable attempt at basic diligence in light to the TRO.

Accordingly, Richard and Amy's competing claims regarding control over the funds are sufficient to satisfy the adverse claimant requirement. Thus, after Chase deposits the funds at issue into the Federal Registry, the Court will have subject matter jurisdiction over this interpleader action.[8]

---

[8] Amy does not dispute that this Court has subject matter jurisdiction pursuant to Section 1335 or that the Court should grant Chase's request for interpleader relief. Amy's Br. at 7. Amy, however, originally argued that at the second step of this interpleader action, pursuant to the *Princess Lida* doctrine, the Court must stay this case to allow the Surrogate's Court to resolve the underlying issue of who is entitled to control the funds. *Id.* at 7. Amy withdrew this request during oral argument. The Third Circuit has interpreted the *Princess Lida* doctrine as divesting a court of subject matter jurisdiction. *Dailey v. Nat'l Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993) ("*Princess Lida* is a 'mechanical rule' which requires that the court in which the second suit is brought yield its jurisdiction if the requisite 'property' showing is made."). Although Amy argues that the Court should use the doctrine at the second stage only, the Court is concerned by the fact that, if applicable, the doctrine would strip this court of its subject matter jurisdiction. In light of this concern, the Court will briefly address the applicability of *Princess Lida* to the matter at hand.

The *Princess Lida* doctrine applies when: (1) the litigation in both the first and second fora are *in rem* or *quasi in rem* in nature, and (2) the relief sought requires that the second court exercise control over the property in dispute and such property is already under the control of the first court. There is no dispute that the New York matter is *in rem* or *quasi in rem* in nature as it involves the administration of a trust and its trustees. *See, e.g., Barbiero v. Kaufman*, 580 F. App'x 107, 112 (3d Cir. 2014) ("[A] suit that concerns or determines the ownership, control and administration of a trust and the powers, duties and liabilities of the trustees is either *in rem* or *quasi in rem*" under *Princess Lida*."). And while it appears to be a disputed issue, the Court concludes that interpleader actions are *in personam*. *See N.Y. Life Ins. Co. v. Dunlevy*, 241 U.S. 518 (1916) (determining that

## IV. CONCLUSION

The Court concludes that the requirements for statutory impleader under 28 U.S.C. § 1335 are satisfied here and Plaintiff's complaint was properly brought. As a result, Plaintiff's request for certain relief pursuant to 28 U.S.C. § 2361 is **GRANTED**. Consequently, the Court orders that (1) Chase must deposit the Funds at issue into the Federal Registry; (2) the New York actions, which are currently pending before the Surrogate's Court of the State of New York, County of New York, File No. 1985-0951[9], and the New Jersey action, *Neu Holdings U.S. Corp., et al. v. J.P. Morgan Chase Bank, N.A., et al.*, Superior Court of New Jersey, Essex County, Chancery Division, Docket No. ESX-C-91-17, are stayed; and (3) Defendants cannot institute any other proceeding that may affect the funds. Defendants are also directed to file an answer to the Complaint by June 1, 2017. After the Defendants file their answers, the Court will (1) set a briefing schedule as to the second stage of this interpleader action; and (2) address, through an appropriate motion(s), Plaintiff's request to be discharged from any and all further liability with respect to the funds and an award of costs, attorneys' fees and any other liabilities incurred in connection with bringing this action. The Defendants are also ordered to discuss in good faith the amount of

---

interpleader is *in personam* action). Although interpleader involves property and, ultimately, a determination of who is entitled to own or control the property, a concern for the stakeholder in an interpleader action is to avoid personal liability for an amount over and above that of the fund in the stakeholder's possession. In this instance, for example, Chase has stated that is does not take a position as to whether Amy or Richard ultimately has control over the amounts in the Chase accounts. Its only goal in this litigation is to avoid liability for any additional amount and to avoid the costs of additional litigation. As a result, the *Princess Lida* doctrine is inapplicable.

[9] The New York actions include: (1) *In re Amy Neu as Beneficiary of the Richard W. Neu Issue Trust, to Remove Richard W. Neu as Trustee, and for Related Relief*; (2) *In re Amy Neu as Beneficiary of the Richard W. Neu Issue Trust No. 1, to Remove Richard W. Neu as Trustee, and for Related Relief*; (3) *In re Amy Neu as Beneficiary of the Richard W. Neu Issue Trust No. 2, to Remove Richard W. Neu as Trustee, and for Related Relief*, and (4) *In re Petition of Amy Neu to Compel Richard W. Neu and Warren L. Dean to Account as Trustees of the Richard W. Neu Issue Trust*.

11

ongoing, necessary, and ordinary business expenses that the entity Defendants should be entitled to have access to while the Funds are held in the Federal Registry. The Court encourages the Defendants to agree to amount that will satisfy the entity Defendants' needs for several months. If the Defendants cannot agree to such an amount, Richard may seek relief from the Court on short notice to release such funds.[10] An appropriate Order accompanies this Opinion.

Dated: May 24, 2017

John Michael Vazquez, U.S.D.J.

---

[10] Richard also argues that interpleader should be denied because it could cause irreparable damage to the entity Defendants. Richard maintains that placing the Funds into the federal registry "would deprive the Neu Companies of funds they need to operate their businesses and probably cause their collapse." Richard's Br. at 16-17. But at oral argument, Amy painted a very different picture of the entity Defendants' financial situation. The Court is certainly cognizant of Richard's concerns. Therefore, the Court will allow the parties to access to the funds to obtain agreed upon ordinary business expenses to alleviate this risk of irreparable harm.